UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **CLEVELAND GARNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Case No. 3:20-cv-00199-GCS** |
| **THOMAS BURRELL, and WARDEN** | ) | |
| **OF SHAWNEE CORRECTIONAL** | ) | |
| **CENTER,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Cleveland Garner is a state prisoner currently incarcerated at Shawnee Correctional Center ("Shawnee") in the custody of the Illinois Department of Corrections ("IDOC"). On February 13, 2020, Plaintiff first filed his complaint against Defendant Thomas Burrell and the Warden of Shawnee pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Specifically, Plaintiff brings one count for deliberate indifference to his serious medical needs in violation of the Eighth Amendment against Defendant Burrell for failing to repair Plaintiff's dentures, which caused him to be unable to eat normally and to suffer pain. (Doc. 17, p. 3).

Defendants filed a motion for summary judgment on the issue of Plaintiff's exhaustion of his administrative remedies on April 7, 2021. (Doc. 40). Plaintiff timely responded to the motion. (Doc. 45, 50, 52, 53). The Court held a hearing on the motion on

July 16, 2021 and took the matter under advisement. (Doc. 57). After careful consideration of the parties' arguments, for the reasons outlined below, the motion for summary judgment is **GRANTED.**

FACTUAL BACKGROUND

Plaintiff's grievance records indicate three grievances potentially relevant to his dental health and medical treatment. *See generally,* (Doc. 41, Exh. A). First, on August 22, 2017, Plaintiff filed a grievance regarding his mental health and medical treatment (the "August 22nd" grievance). *Id.* at p. 19-21. Plaintiff explained that he had muscle spasms and required medication in order to sleep. *Id.* at p. 20. He requested a discussion with a mental health doctor in order to get a refill on his prescription. *Id.* On August 25, 2017, Plaintiff's grievance counselor provided a written response and returned the grievance to Plaintiff. *Id.* The counselor's response on the grievance stated: "per written response; grievant was seen by mental health staff 8/28/17 and scheduled for follow-up." *Id.* There is no indication that Plaintiff appealed this grievance to the Chief Administrative Officer or Grievance Officer. *See id.* at p. 19. On September 25, 2017, the Administrative Review Board ("ARB") received Plaintiff's appeal. *Id.* The ARB denied the appeal and returned it to Plaintiff on October 18, 2017, stating that additional information was required; Plaintiff did not attach the original grievance with the counselor's response or the Grievance Officer or Chief Administrative Officer's response. *Id.*

Plaintiff filed his second potentially relevant grievance on November 13, 2018 (the "November 13th" grievance). (Doc. 41, p. 3). In this grievance, Plaintiff stated that he went to see the dentist about getting his dentures fixed; however, the dentist refused to finish

fixing his teeth. (Doc. 41, Exh. A, p. 18). The counselor's response, dated November 16, 2018, stated: "[s]ee attached grievance response from Dr. Burrell dated 11/20/18." *Id*. There is no response attached from either the Grievance Officer or Chief Administrative Officer. *See id*. The ARB received Plaintiff's appeal on December 10, 2018. *Id*. at p. 17. On December 14, 2018, the ARB denied the appeal and requested that Plaintiff provide a copy of the response to the grievance from the Grievance Officer or Chief Administrative Officer. *Id*.

On January 27, 2019, Plaintiff filed his final potentially relevant grievance (the "January 27th" grievance). (Doc. 41, p. 3). Plaintiff claimed that he had attempted to have his teeth repaired, but they were still bothering him. (Doc. 41, Exh. A, p. 16). He requested that his teeth be fixed as soon as possible. *Id*. The counselor's response, dated January 31, 2019, stated that Health Care Unit Administrator Smoot found documentation regarding Plaintiff's attempts to have his dentures repaired, but no documentation regarding complaints of pain or discomfort. *Id*. There was no indication that the Grievance Officer or Chief Administrative Officer received an appeal of this grievance; like his prior grievances, the ARB denied Plaintiff's appeal and requested copies of responses from the Grievance Officer or Chief Administrative Officer on February 20, 2019. *Id*. at p. 12.

When Plaintiff submitted his January 27th grievance to the ARB, he also included a copy of his November 13th grievance. (Doc. 41, Exh. A, p. 13). The copy of the November 13th grievance included a counselor's response and a letter from Dr. Burrell dated November 20, 2018. *Id*. at p. 13-14. However, the handwriting on the counselor's response was different than that on the copy of the November 13th grievance that was submitted

to the ARB on December 10, 2018. (Doc. 41, p. 3). Shawnee Clinical Services Supervisor Bob Allard noted that the counselor's response and signature in the copy of the November 13th grievance did not belong to the counselor. *Id.* at p. 4. During the hearing on Defendants' motion for summary judgment, Mr. Allard accused Plaintiff of forging the signatures. However, Mr. Allard conceded that there were no substantive differences between the counselor's response on the copy of the November 13th grievance and the original November 13th grievance.

## LEGAL STANDARDS

Summary judgment is proper when a moving party demonstrates that the record cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). In order to survive a motion for summary judgment, the non-moving party must provide admissible evidence from which a reasonable jury could find in favor of the non-moving party. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Traditionally, the Court's role in determining a motion for summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but is instead to determine whether there is a genuine issue of material fact. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, in *Pavey v. Conley*, the Seventh Circuit held that a judge, rather than a jury, should determine whether factual issues relating to the defense of the failure to exhaust administrative remedies exist. 544 F.3d 739, 741 (7th Cir. 2008). If the Court determines that a prisoner did not exhaust his administrative remedies, the Court will outline one of three potential outcomes: (a) if the plaintiff still has time to do so, the plaintiff must go back and exhaust

his administrative remedies; (b) if the plaintiff's failure to exhaust was innocent, as where prison officials prevent a prisoner from exhausting his remedies, the plaintiff must be given another chance to exhaust; or (c) if the failure to exhaust was the prisoner's fault, the case is over. *Id.* at 742.

The PLRA governs lawsuits filed by inmates and states that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."42 U.S.C. § 1997e(a).  In order to satisfy the PLRA's exhaustion requirement, prisoners must strictly adhere to the grievance process. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Prisoners must exhaust their remedies before filing suit. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust administrative remedies while that suit is pending. *Id.* Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Prisoners must follow a prison's administrative rules when exhausting their remedies. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). As an inmate confined within the IDOC, Plaintiff is required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") in order to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq.* The grievance procedures require prisoners to submit a grievance to a counselor within sixty days of discovering the underlying incident. *See* 20 ILL. ADMIN. CODE § 504.800. These grievances

must state the "factual details regarding each aspect of the offender's complaint including what happened, when, the name of any individual involved, and where the incident occurred." 20 ILL. ADMIN. CODE § 504.810(a). If a prisoner is not satisfied with the counselor's response to the grievance, then that prisoner can submit a formal grievance to the prison's grievance officer. *Id.* at (a)-(b). The officer must then review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within two months of receipt of the grievance, when reasonably feasible under the circumstances, the grievance officer must report findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL. ADMIN. CODE § 504.830(e). If the prisoner is still not satisfied with the CAO's decision, the prisoner can formally appeal to the Director through the ARB within thirty days of the CAO's decision. *See* 20 ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the grievance officer's report and the CAO's decision to the appeal. *Id.* The ARB then submits its recommendation to the Director, who is then responsible for issuing the IDOC's final decision. *See* 20 ILL. ADMIN. CODE § 504.850(f).

The grievance process also permits an inmate to file an emergency grievance directly to the CAO. *See* 20 ILL. ADMIN. CODE § 504.840(a). The CAO may determine if there is a substantial risk of imminent personal injury or other serious harm to the offender. *Id.* If the CAO determines that the grievance is a non-emergency, the prisoner is notified in writing that the prisoner may resubmit the grievance as a non-emergency and move forward with the standard grievance process. *See* 20 ILL. ADMIN. CODE § 504.840(c).

The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). This allows the prison administration an opportunity to fix the problem or to reduce damages and to shed light on factual disputes that may arise in litigation. *See Pozo*, 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective grievance. *See Woodford*, 548 U.S. at 83. Unless a prisoner completes the administrative review process by following the rules established for that process, exhaustion has not occurred. *See Pozo*, 286 F.3d at 1023.

## ANALYSIS

Defendants argue that the Court should grant summary judgment in their favor because Plaintiff failed to follow the grievance process properly for any of the three potentially relevant grievances he filed. (Doc. 41, p. 9). Inmates must complete the administrative review process according to the rules and procedures the IDOC established in order to exhaust their administrative remedies properly. *See Pozo*, 286 F.3d at 1023. This process ensures that the prison administration has had a full opportunity to address the inmate's problem, reduce potential damages, or shed light on factual disputes which may arise in potential litigation. *Id*. at 1023-24. The Seventh Circuit requires strict compliance with exhaustion requirements; inmates must follow all grievance rules as established by the IDOC. *See Applewhite v. Blum*, Case No. 17-cv-1111-JPG-SCW, 2018 WL

6202115, at *3 (S.D. Ill. Oct. 26, 2018)(citing *Dole*, 438 F.3d at 809). Inmates must therefore file their grievances and appeals of those grievances in "the place, and at the time, the prison's rules require." *Pozo*, 286 F.3d at 1025.

At Shawnee, inmates must follow a three-step process to exhaust their remedies prior to bringing a lawsuit. (Doc. 41, p. 9). First, inmates must file a grievance with their counselor within sixty days of the incident underlying the complaint. *Id*. Second, after receiving a response, the inmate must timely appeal to the Grievance Officer or CAO. *Id*. Third, the inmate must appeal to the ARB within thirty days. *Id*. None of Plaintiff's three grievances include a response from his Grievance Officer, and there is no evidence that Plaintiff submitted his grievances for the second level of review. The ARB denied all three of Plaintiff's grievances on this technical ground. Because Plaintiff did not properly follow Shawnee's procedure for filing and appealing his grievances, his administrative remedies remain unexhausted.

Plaintiff contends that he followed the grievance procedure at Shawnee to the best of his ability. (Doc. 45, p. 2). Though he submitted the grievance to his Grievance Officer, Plaintiff claims that he received the grievance with no explanation or attempts to remedy the situation. *Id*. Plaintiff therefore appealed to the ARB as outlined in the grievance policies at Shawnee. *Id*.

There are three circumstances in which an administrative remedy is not capable of use to obtain relief, and is therefore unavailable: (i) when the remedy operates as "a simple dead end," in which officers are unable or unwilling to provide relief; (ii) when, though mechanisms exist through which inmates can technically obtain relief, the

mechanisms are so opaque no ordinary inmate can navigate them; or (iii) when prison administrators thwart a prisoner's attempt to take advantage of available remedies through "machination, misrepresentation or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-60 (2016); *see also Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008); *Pavey*, 544 F.3d at 742; *Dole* 438 F.3d at 808. When a plaintiff properly follows the procedure for exhausting administrative remedies, but prison officials mishandle the grievance, the remedy is rendered unavailable. *See Dole*, 438 F.3d at 811. For example, if a prison appellate body rejected an appeal on the basis of a grievance officer's misidentification of the prisoner's prison number, a plaintiff could argue that this mistake rendered his attempts to exhaust his administrative remedies thwarted. *See Ross v. Bock*, No. 16-C-8672, 2017 WL 6758394, at *3 (N.D. Ill. Nov. 29, 2017).

If grievance personnel do not respond to a prisoner's grievance, that prisoner's administrative remedies are also rendered unavailable. *See Dole*, 483 F.3d at 809. However, in order for a prisoner's remedies to be unavailable due to lack of a response, a prisoner must have no indication that officials are pursuing his case. *See Reid v. Balota*, 962 F.3d 325, 331 (7th Cir. 2020). For example, when prison officials state that they will inform a prisoner of the status of his or her grievance within sixty days, "whenever possible," a period of silence exceeding six months nevertheless does not render remedies unavailable because officials may still be investigating a complicated case. *Ford*, 362 F.3d at 400. In contrast, in *Reid*, the Seventh Circuit Court of Appeals found that a two-month period of silence rendered administrative remedies unavailable only because the prisoner

had no other reason to believe that anyone was "looking into" his grievance. 962 F.3d at 331.

During the hearing on Defendants' motion for summary judgment, Mr. Allard explained that administrators logged a record of an inmate's grievances, including their appeals to the Grievance Officer, for each step of the grievance process after 2018. However, there is no record that the Grievance Officer ever received any appeal from Plaintiff for any of his three potentially relevant grievances. While the Plaintiff during the hearing did appear to indicate that he had submitted an appeal to the Grievance Officer, but got no response, he later admitted during cross-examination that he likely skipped the second level of review at the facility.

This appears to be confirmed by the testimony regarding the November 13th grievance wherein Mr. Allard accused Plaintiff of forgery. A copy of the November 13th grievance was submitted to the ARB, as opposed to the original grievance. Mr. Allard noted however that the handwriting on the grievance copy was not from the counselor whose signature was on the grievance. Mr. Allard believed it was a forgery because he knew the counselor's handwriting and confirmed with the counselor that the signature on the copy was not hers. However, upon questioning by the Court, Mr. Allard admitted that the substance of the original November 13th grievance and the copy of the November 13th grievance was the same. As an initial matter, the Court does not believe that Plaintiff had the intent to forge any document as the copy of the November 13th grievance was the same in form and substance as the original November 13th grievance. Rather, it appears that the Plaintiff simply made a copy of the original November 13th grievance and sent

the copy, as opposed to the original grievance to the ARB for consideration. However, in order for Plaintiff to make a copy of his original November 13th grievance, it had to have been returned to him by his counselor because his counselor's comments were included in the copy that was made. But, instead of forwarding this grievance to the Grievance Officer for second level review as was required, Plaintiff sent the grievance to the ARB. This evidence confirms Plaintiff's admission that he likely skipped the second level of review. As such, the Court finds that the grievance process was available to Plaintiff and that he was not thwarted in his attempts to remedy his complaints.

Even if Plaintiff did submit his grievances to the Grievance Officer and it was not responded to, his remedies remain unexhausted because he appealed to the ARB prior to waiting a sufficient period of time to determine that no one was looking into his response. The Grievance Officer and CAO are afforded a full two months to review an inmate's grievance and provide a response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(e). Plaintiff received his counselor's response to his August 22nd grievance on August 25, 2017. (Doc. 41, p. 2). However, he submitted the grievance to the ARB on September 25, 2017. *Id*. The Grievance Officer and CAO had another thirty days in which to respond to Plaintiff's August 22nd grievance, making this appeal untimely.

Equally, Plaintiff received his counselor's response to his November 13th grievance on November 16, 2018 but appealed to the ARB by December 10, 2018. (Doc. 41, p. 3). Though Plaintiff received his counselor's response to his January 27th grievance on January 31, 2019, he appealed to the ARB prior to February 20, 2019. *Id*. Plaintiff submitted both of these grievances to the ARB well within the timeframe in which the Grievance

Officer and CAO could respond to Plaintiff's appeal. Accordingly, Plaintiff prematurely appealed to the ARB and failed to follow Shawnee's procedures for exhausting his remedies. Plaintiff's administrative remedies therefore remain unexhausted.

CONCLUSION

For the above stated reasons, Defendants' motion for summary judgment for failure to exhaust administrative remedies (Doc. 40) is **GRANTED.** The Court directs the Clerk of the Court to dismiss this case without prejudice.

**IT IS SO ORDERED.**

**Dated:  July 23, 2021.**

Digitally signed
by Judge Sison 2
Date: 2021.07.23
17:48:40 -05'00'

_____

**GILBERT C. SISON**
**United States Magistrate Judge**